LEZAK & LEVY WHOLESALE MEATS, INC., Plaintiff-Appellant, *v.* ILLINOIS EMPLOYERS INSURANCE COMPANY OF WAUSAU *et al.,* Defendants-Appellees.

First District (4th Division)   No. 83—0028

Opinion filed February 16, 1984.

Chuhak, Tecson, Kienlen & Feinberg, of Chicago (William J. O'Connor, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini and James M. Hoey, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Lezak & Levy Wholesale Meats, Inc., filed suit against Illinois Employers Insurance Company of Wausau (Employers) and Prairie State Cold Storage, Ltd., alleging that from September 15, 1976, until April 30, 1977, it placed approximately 5,000 cartons of wholesome meats with defendant Prairie State for freezing and storage. Plaintiff further alleged that on May 15, 1976, defendant Employers issued to Prairie State its "all risk" or "multi-peril" policy of insurance against all risk of physical loss or damage to the cold storage facility and all loss of personal property in said facility, which was to remain in force until May 15, 1979. Employers subsequently issued an "additional endorsement" to the policy, covering "additional insureds" which included plaintiff. Thereafter, in June of 1977, plaintiff discovered that approximately 637 cartons of its meat held by Prairie

State had spoiled and were unfit for human consumption.

In its answer to plaintiff's amended complaint, Employers set forth as an affirmative defense the policy's exclusion of loss resulting from the breakdown of cooling equipment and machinery. The relevant policy provides that it insures against all risks of direct physical loss to personal property "subject to the provisions and stipulations herein" provided. The policy then provides, under the bold-faced, upper case heading "EXCLUSIONS":

> "This policy does not insure under this form against loss caused by *** failure, breakdown or derangement of machines or machinery ***
>
> ***
>
> This policy does not insure under this form against loss caused by or resulting from power, heating or cooling failure *** ."

The policy further expressly provides that its provisions apply to "any person or organization named *** as an additional insured."

Plaintiff's response to Employers affirmative defenses stated that:

> "Plaintiff admits that the policy of insurance herein sued upon, provides the endorsement and exclusions contained in defendant's affirmative defenses, but otherwise denies the allegations of defendant's affirmative defense."

Counts II and III of plaintiff's complaint, which were directed against the bailees, were dismissed and the cause proceeded to trial on count I against Employers. After hearing the evidence, the trial court ruled, over plaintiff's assertion to the contrary, that the damage was caused by the failure of refrigeration machinery which fell within the purview of the policy exclusion. Plaintiff also argued below, and now raises on appeal, that the insurance certificate which it had received was the basis of its claim, and constituted the contract which should prevail over the terms of the underlying policy. In rejecting this assertion, the trial court first noted that plaintiff had admitted in its response to defendant's affirmative defense that its claim was bottomed upon the policy of insurance. The court went on to find that, assuming that the certificate and policy are to be read together, that the terms of those documents, when read as a whole, plainly exclude coverage. The court specifically held that the certificate was not an independent undertaking and agreement which would supersede and vitiate the terms of the underlying policy. We agree, and affirm the trial court's ruling.

Elliot Levy, president of plaintiff corporation, testified at trial. Levy identified the certificate of insurance which he received from

Employers as the sole document he received pertaining to the meat stored at Prairie State. The subject certificate contains on its face the term "all risk" which is accompanied by a box containing an "x", and also contains the terms "excluding," "earthquake" and "flood," each of which is accompanied by boxes marked "x". The following line provides for a deductible amount of $100 which applies to "all losses." The certificate clearly states, directly under its heading, however, that:

> "This is to certify that the insurance policies (described below by a policy number) written on forms in use by the company have been issued. This certificate is not a policy or binder of insurance and does not in any way alter, amend or extend the coverage afforded by any policy referred to herein."

The certificate also reiterates that the policy, which is specifically identified by number, "is subject to all of the terms, exclusions and conditions of such policy *** during the term(s) thereof." On cross-examination, Levy testified that he had read the foregoing certificate, and specifically the statement therein that the certificate is not a policy or binder of insurance and that coverage is subject to all the terms, exclusions and conditions set forth in the policy. Levy further admitted that he did not contact either Prairie State, to whom the policy had been issued, or Employers, to review the policy.

■ Relying principally on *J. M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 357 N.E.2d 125, *appeal denied* (1977), 65 Ill. 2d 581, plaintiff now appeals to this court for a finding that the clear, exclusionary language in the policy of insurance is not binding because that specific language was not included in the certificate of insurance which was the only document in plaintiff's possession. *Corbett* is factually distinguishable from the instant case, however, and we find plaintiff's reliance on that case to be misplaced. In *Corbett,* a certificate of insurance was issued to the plaintiff contractor which evidenced insurance purchased by a subcontractor, pursuant to a contract between the parties, for plaintiff's benefit. The certificate also set forth a contracted-for indemnity agreement in which the subcontractor had broadly agreed to indemnify the plaintiff for "any and all claims *** incident to the work being performed under the contract." Since the subcontractor had agreed to procure insurance for plaintiff, the certificate created the impression that the insurance procured would parallel the indemnity agreement. The actual policy, however, excluded liability arising from the use of rental vehicles. The court found that the certificate appeared to create an exception to that exclusion, implying that coverage would be afforded for

any liability arising out of the contract, particularly where the certificate made no reference to the terms, conditions and exclusions in the policy and did not state that its terms did not modify coverage. The court then resolved the ambiguity in favor of the person to be indemnified. In contrast to the certificate in *Corbett,* the certificate issued by Employers specifically stated that it was not part of the policy and that the terms of the policy were controlling. Nor do we find ambiguity when reading the two documents in conjunction with one another. The certificate describes the general variety of coverage purchased, provides that it is not the policy and that it does not amend or expand the terms of coverage provided in the policy. The policy to which the certificate refers plainly provides that the coverage which it grants is "subject to exclusions," which it then sets forth in clear and unambiguous language under the emphasized heading "EXCLUSIONS." These facts simply do not permit the conclusion drawn by the court in *Corbett,* that the insured could not have realized that its coverage was subject to exclusions, particularly where, as here, plaintiff admitted an awareness that separate exclusions were to be enunciated in the policy itself. Our decision comports with the general rule that a certificate of insurance does not constitute a contract between the parties. See *United States Pipe & Foundry Co. v. United States Fidelity & Guaranty Co.* (5th Cir. 1974), 505 F.2d 88.

There is no question but that the parties here recognized that they were required to refer to the policy in order to ascertain their rights and obligations.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.