STATE of Alaska, Appellant,

v.

ORIENTAL FIRE & MARINE INSUR-
ANCE CO., LTD., a corporation of
the Republic of Korea, Appellee.

No. S–2379.

Supreme Court of Alaska.

June 2, 1989.

As Amended on Denial of Rehearing
July 19, 1989.

Charles Hagans, Hagans, Brown, Gibbs & Moran, Anchorage, for appellant.

Robert C. Bundy and S. Jay Seymour, Bogle & Gates, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

I. INTRODUCTION

This appeal arises out of the same airplane crash as the recently decided case of *State of Alaska v. Korean Air Lines Co., Ltd.*, 776 P.2d 315 (Alaska 1989).[1] The crash occurred on December 23, 1983, when a DC–10 operated by Korean Air Lines (KAL) attempted to take off at the Anchorage International Airport and collided with a Piper Navajo Chieftain operated by Southcentral Airlines, Inc.

This litigation involves a suit by KAL's insurance carrier, Oriental Fire & Marine Insurance Co., Ltd. (Oriental), against the State of Alaska for its negligence in the design, construction, operation, and maintenance of Anchorage International Airport, its runways, taxiways, and aids to aircraft operations on runways and taxiways. Oriental, as a subrogee of KAL, sought damages for the loss of the DC–10, for indemni-

---

1. *State v. KAL* involved the question of whether the indemnity provision in the terminal facilities lease agreement between the State and KAL required KAL to indemnify the State for the State's own negligence involving accidents on the airport's runways and taxiways.

ty or contribution for claims paid to passengers on the Southcentral flight, for Southcentral's claim for loss of the Piper Navajo, and for claims pending against KAL for the loss of the cargo aboard the DC–10. As a result of interrelated litigation, Oriental has stipulated to dismissal of its claims against the State with prejudice. The issues in this case arise out of the State's counterclaims and involve the extent of the State's coverage as a third-party insured under KAL's insurance policy with Oriental and whether Oriental expressly waived its right of subrogation against the State. The superior court entered summary judgment in favor of Oriental holding that the insurance coverage provided to the State was coextensive with the lease agreement and did not extend coverage to risks associated with KAL's use of the runways and taxiways. For the reasons set forth below, we affirm the superior court.

## II. FACTS

On January 27, 1981, KAL and the State entered into a five-year lease agreement for terminal space in the Anchorage International Airport. The terminal lease agreement contained a provision requiring that KAL obtain certain minimum amounts of liability insurance and include the State as an additional insured.[2]

KAL procured the insurance policy at issue from Oriental on July 1, 1983. This policy provided comprehensive coverage for KAL's worldwide operations. In addition, the policy provided for the inclusion of other parties as additional insureds. The underwriters issued a certificate [hereinafter July 1, 1983, certificate] that named the State of Alaska as an additional insured under the policy. The July 1, 1983, certificate stated in relevant part:

> It is further certified that the Insurer/Reinsurers have agreed to endorse the policy as follows in respect of Lease No. ADA–04331 dated 27th January, 1981 and Supplement Number 2 thereto entered into on 25th June, 1982 between the above named Assured and the STATE OF ALASKA DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES:
>
> 1. To waive rights of subrogation against the STATE OF ALASKA, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES[,] and to include them as Additional Assured for their respective rights and interests in accordance with said Lease Agreements.

Similarly worded certificates were issued on July 3, 1981, and July 1, 1982. The underwriters also issued a document entitled "endorsement number one," dated September 6, 1982, which provided that the insurer/reinsurers had agreed to the renewed lease between KAL and the State.[3]

2. The provision read in pertinent part:
   17. (a) As of the beginning date of the term of this lease and at no expense to the Lessor [the State], the Lessee [KAL] shall secure and keep in force during the term of this lease adequate insurance to protect both the Lessor and the Lessee against comprehensive public liability and property damage in no less than the following amounts:
   (i) Property damage arising from one occurrence in the amount of not less than $50,000.
   (ii) Personal injury or death in an amount of not less than $100,000 per person and $300,000 per occurrence.
   (b) The Lessee shall provide the Lessor with proof of insurance coverage in the form of an insurance policy or a certificate of insurance coverage, together with proof that the premiums have been paid. All insurance required by this covenant must:
   (i) Name the Lessor as an additional assured;
   (ii) provide that the Lessor be notified at least thirty (30) days prior to any termination, cancellation, or material change in the insurance coverage; and
   (iii) include a waiver of subrogation by which the insurer waives all rights of subrogation against the Lessor for payments made under the policy.
   (c) The requirement of insurance coverage will not relieve the Lessee of any other obligations under this agreement.

3. The endorsement number one stated in part:
   The waiver of subrogation, additional assured and cancellation provisions as detailed in Certificate of Insurance C82/KAL/2 dated 1st July, 1982 are deemed to apply in respect of this Supplement Number 2.
   Subject to the terms, conditions, limitations and exclusions and cancellation provisions of the Policy.

## III.  PROCEEDINGS

On December 23, 1985, Oriental, as subrogee of KAL, filed a complaint against the State seeking damages and indemnity or contribution from the State for negligence in the KAL–Southcentral air crash.  The State filed an answer and counterclaim alleging that Oriental had agreed to waive its rights of subrogation against the State, that the State was an additional insured under the policy of the insurance written by Oriental and was entitled to all the benefits of the policy, and that Oriental, in bringing suit against the State, had breached both the provisions of the insurance contract and the implied covenant of good faith and fair dealing.

The State moved for summary judgment to dismiss Oriental's complaint with prejudice.  Oriental then moved for summary judgment on the State's counterclaim and for partial summary judgment on the State's affirmative defenses.

As a result of these motions, the issue was joined whether as a matter of law the State was an insured under the Oriental policy for the State's legal liability arising out of the December 23 accident and whether Oriental had waived all rights of subrogation for amounts paid under the Oriental policy.

On April 15, 1987, the trial court denied the State's motion for summary judgment and granted Oriental's motion for summary judgment and partial summary judgment. Judge Hunt concluded that the certificate of insurance incorporated by reference the terminal premises lease between the State and KAL and that the insurance coverage provided to the State by Oriental was co-extensive with the scope of the terminal premises lease.  The court concluded that Oriental's coverage did not extend to risks and losses associated with KAL's use of the taxiways and runways.  The court further concluded that the waiver of rights of subrogation could not reasonably be read to extend further than the specific risks and losses for which insurance was provided to the State within the certificate of insurance.  The court therefore concluded that Oriental did not provide a waiver of subrogation to the State for risks and losses associated with activities conducted by KAL on the runways and taxiways.

The State appeals.[4]

## IV.  DISCUSSION

### A.  Standard of Review

A summary judgment is affirmed when the evidence in the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985); Alaska R.Civ.P. 56(c).  Both parties agree that this case does not present any disputed issues of material fact.  The question before us is a legal one.  Based upon the insurance policy, endorsements, certificates and the terminal lease, we are to determine, as a matter of law, the scope of the insurance coverage provided to the State and of the waiver of subrogation by Oriental.

### B.  Did the Trial Court Err in Concluding that the Insurance Policy Should Be Construed in Conjunction with the Certificate of Insurance to Determine the Scope of the Insurance Coverage Provided to the State?

Oriental argues that the policy, the certificate and the lease should be construed together in order to determine the scope of coverage contained in the policy.  Oriental contends that the certificate language providing for the State's coverage as an additional insured "for their respective rights and interests in accordance with said Lease Agreements" operates as limiting language on the policy's coverage.  Oriental also argues that the certificate is an endorsement

4.  On October 30, 1987, the State filed a motion to remand to allow Judge Hunt to consider the effect of a judgment entered by Judge Serdahely in *Southcentral Air, Inc. v. Korean Air Lines Co., Bum Hee Lee, Bong Hyun Cho, and State of Alaska,* Case No. 3AN–84–7573 Civil, dismissing certain claims of KAL against the State.  On May 26, 1988, the parties stipulated to dismiss the complaint of Oriental with prejudice, rendering moot the question raised on remand. The stipulation excluded the State's counterclaims that are the subject of this appeal.

which limits the extent of the State's insurance coverage. The State argues that it is contrary to insurance law, practice and procedure for the trial court to have concluded that the policy coverage was limited by the certificate.

■ In *Wright v. Vickaryous*, 598 P.2d 490, 497 (Alaska 1979), this court noted that

[t]o ascertain the reasonable expectations of the parties [to an insurance contract], we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

(quoting *Stordahl v. Government Empl. Ins. Co.*, 564 P.2d 63, 66 (Alaska 1977) (footnote omitted)). Alaska Statute 21.42.230 provides that "[e]ach insurance contract shall be construed according to the entirety of its terms and conditions as set out in the policy and as amplified, extended, or modified by a rider, endorsement, or application which is a part of the policy." Under the majority rule, where the provisions of an effective endorsement conflict with those of the insurance policy, the endorsement controls. *See* 43 Am.Jur.2d *Insurance* § 280 (1982). Even without a formal endorsement, a number of courts have construed certificates of insurance in conjunction with the policy itself to determine the coverage of third-party insureds.[5]

■ We conclude that the July 1, 1983 certificate issued to the State acts as an endorsement of the Oriental policy with KAL. The certificate specifically states "that the insurers/Reinsurers have agreed to endorse the policy as follows in respect Lease No. ADA–04331." The certificate of insurance's main purpose was to include the State as an additional insured under KAL's policy with Oriental. Without this endorsement, the KAL policy would not have extended coverage to the State. Con-

sequently, we conclude that the superior court properly construed the certificate as part of the policy of insurance.

C. Did the Trial Court Err in Concluding that the Insurance Coverage Did Not Extend to Risks and Losses Associated with KAL's Use of the Runways and Taxiways?

■ The superior court concluded that the certificate's language providing coverage for the State's "respective rights and interests in accordance with [the lease]" limited coverage to risks and losses within the scope of the terminal premises lease. We agree.

Paragraph 17 cannot reasonably be read to require KAL to procure insurance for the State for activities conducted on the runways and taxiways. The minimum required insurance coverage of $50,000 for property damage and $100,000 for personal injury is clearly inadequate to cover the potentially staggering liability arising from aircraft accidents on the runways or taxiways. We conclude that in light of the minimum insurance coverage required in paragraph 17, it would be unreasonable to conclude that the parties anticipated coverage for such accidents.

The State argues that such a reading is inconsistent with *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988). In *Underwriters*, Japan Air Lines satisfied the State's insurance requirement by including it as an additional insured under its comprehensive liability policy. The certificate of insurance in *Underwriters* did not limit the policy's broad coverage by including limiting language in the certificate. Indeed, the certificate of insurance in *Underwriters* specifically noted that coverage was provided for "All Locations, All Operations." In this case, Oriental specifically limited the terms of coverage by referencing the lease agreement.

**5.** *Bain v. Benefit Trust Life Ins. Co.*, 123 Ill. App.3d 1025, 79 Ill.Dec. 528, 463 N.E.2d 1082 (1984); *Lezak & Levy v. Illinois Emp. Ins. Co.*, 121 Ill.App.3d 954, 77 Ill.Dec. 419, 460 N.E.2d 475 (1984); *J.M. Corbett Co. v. Insurance Co. of N. Am.*, 43 Ill.App.3d 624, 2 Ill.Dec. 148, 357

N.E.2d 125 (1976). *But see Continental Cas. Co. v. Signal Ins. Co.*, 119 Ariz. 234, 238, 580 P.2d 372, 376 (1978) ("a Certificate of Insurance cannot contradict the terms of a policy; it only provides information as to the policy's contents").

In conclusion, we find that the coverage provided by Oriental does not extend to risks and losses on the taxiways and runways of the Anchorage International Airport.

**D. Did the Trial Court Err in Concluding that the Waiver of Subrogation Agreed to by Oriental Did Not Extend Further Than the Specific Risks and Losses for Which Insurance Was Provided to the State?**

 Judge Hunt concluded that since the policy does not provide coverage for risks and losses on the runways and taxiways, Oriental's waiver of subrogation could not reasonably be read to extend to such risks or losses. We agree.

Paragraph 17 of the lease agreement required KAL to provide insurance which included "a waiver of subrogation by which the insurer waives all rights of subrogation against the Lessor *for payments made under the policy.*" (Emphasis added). The Certificate of Insurance agrees "[t]o waive rights of subrogation against the STATE OF ALASKA, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, and to include them as Additional Assured for their respective rights and interests in accordance with said Lease Agreements." The State argues that the language of the certificate waived all subrogation against the State. We disagree.

When construed together, the lease language and the insurance certificate make clear that the waiver of subrogation is limited to payments under the policy for risks associated with the terminal lease. Oriental, therefore, did not waive its right of subrogation against the State for accidents on the runways and taxiways of Anchorage International.

## V. CONCLUSION

We conclude that the insurance coverage provided to the State by KAL does not cover accidents on the runways and taxiways of Anchorage International Airport. Oriental's waiver of subrogation was limited to payments made under the policy and thus does not include accidents on the runways and taxiways.

The judgment of the superior court is AFFIRMED.