*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STEPHANIE W., | ) | |
| | ) | Supreme Court No. S-15065 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-09-02329 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MAXWELL V., | ) | |
| | ) | No. 6869 – February 28, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Richard W. Postma, Jr., Law Offices of Dan Allan & Associates, Anchorage, for Appellant. No appearance by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

Stephanie W. and Maxwell V. have a son, Terrance.[1]  Maxwell sued for custody of Terrance, and the superior court granted him primary physical custody and

---

[1]    We use pseudonyms throughout this opinion to protect the privacy of the persons involved.

joint legal custody. In *Stephanie W. v. Maxwell V.*,[2] we reviewed that first custody order and affirmed it in most respects but remanded for reconsideration of two custody factors.[3] On remand, the superior court again granted Maxwell primary physical custody.

Stephanie appeals this second custody order. Two of her arguments, relating to discovery, were not preserved for appeal, are therefore forfeited, and do not constitute plain error. A third fails on the merits. She also challenges the superior court's determination of two custody factors in light of this court's remand instructions in *Stephanie W.*, arguing that the superior court abused its discretion by failing to consider Maxwell's child support arrears in its stability determination, and that the superior court abused its discretion by holding against her, in the continuing-relationship determination, her allegations that Maxwell was manufacturing methamphetamine with Terrance present.

We affirm the superior court's order in all respects.

## II.   FACTS AND PROCEEDINGS

Terrance was born to Stephanie and Maxwell in December 2002 in New Mexico. His parents never married. Maxwell moved to Alaska and left Stephanie while she was pregnant. Maxwell had no relationship with Terrance for three and a half years until Maxwell's mother, who had maintained a relationship with Stephanie and Terrance, brought Terrance to Alaska for the summer of 2005. Terrance came to Alaska to live with Maxwell and Maxwell's mother from May 2006 to January 2007. He then lived with Maxwell for a full year starting in June 2008. Maxwell returned Terrance to Stephanie in New Mexico in June 2009 for what Maxwell thought was to be a summer

---

[2]      274 P.3d 1185 (Alaska 2012).

[3]      *Id.* at 1193.

visit. When Stephanie refused to send Terrance back to Alaska at the end of the summer, Maxwell filed a motion for custody in Alaska, seeking sole legal and primary physical custody.

### 1. First custody order and first appeal

In the superior court's first order granting Maxwell primary physical custody during the school year and Stephanie custody during the summers, with shared legal custody, the court relied on a number of statutory custody factors. Relevant to the first appeal was the superior court's determination under AS 25.24.150(c)(5), the stability factor,[4] that Maxwell had a "more stable situation and more stable personality" and could therefore "provide [Terrance] with a consistent living situation," while Stephanie was "in a considerably more fluid situation" because she worked four 12-hour shifts as a nurse at a hospital 70 miles from her home and could therefore not provide a stable environment for Terrance. In making this finding, the superior court did not consider the fact that Maxwell owed Stephanie $23,855.14 in outstanding child support arrears. The superior court also determined under AS 25.24.150(c)(6), the continuing-relationship factor,[5] that Maxwell was willing to foster a relationship between Terrance and Stephanie but that Stephanie was not willing to reciprocate. The court relied, in part, on the fact that Stephanie had alleged that Maxwell had sexually abused Terrance in

---

[4]     AS 25.24.150(c)(5) provides that a court determining custody in light of the best interests of the child shall consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."

[5]     AS 25.24.150(c)(6) provides that a court determining custody in light of the best interests of the child shall consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child."

Alaska and that, even though the superior court found that Stephanie had not proved that allegation by a preponderance of the evidence, Stephanie was unlikely to let the allegation go and would likely "convey[] her fears to [Terrance]."

In Stephanie's first appeal of the superior court's custody order in *Stephanie W. v. Maxwell V.*,[6] we upheld the order in most respects but reversed and remanded for reconsideration of the stability and continuing-relationship factors.[7] On the stability issue, we surmised that "Maxwell's failure to pay child support was likely a contributing factor to Stephanie's grueling work schedule" and concluded that the superior court must "reconsider the continuity and stability factor taking account of Maxwell's failure to provide any meaningful monetary support for Terrance and Stephanie's efforts to provide economically for her children."[8] On the continuing-relationship factor, we noted that AS 25.24.150(c)(6) creates a statutory exception that precludes a court from holding against a parent her unwillingness to foster a relationship with another parent who has engaged in domestic violence or sexual abuse against the parent or a child.[9] On policy grounds, we adopted a rule protecting allegations of conduct that could constitute sexual abuse but are ultimately not proved at trial.[10] We noted that the superior court in this case found Stephanie's allegations of sexual abuse "troubling" and that Stephanie had introduced expert opinion testimony supporting her

---

[6]    274 P.3d 1185 (Alaska 2012).

[7]    *Id.* at 1193.

[8]    *Id.*

[9]    *Id.* at 1190-91.

[10]   *Id.* at 1191.

allegation.[11]  We remanded with instructions "not [to] consider this factor against Stephanie unless she has continued her unwillingness to facilitate such a relationship in the period after the superior court made its evidence-based finding that Maxwell had not abused Terrance."[12]

### 2.    Second custody order and arguments on appeal

On remand, the superior court held an initial hearing on August 3, 2012. Stephanie and her attorney participated by telephone, as did the judge, but Maxwell did not appear or participate by telephone.  Stephanie's attorney told the superior court that "[Maxwell] ha[d] pretty much dropped off our radar," that calls and letters had bounced back undelivered, that Stephanie did not know when or where to return Terrance to Alaska, and that Maxwell had a history of disappearing.  Based on these representations, the superior court invited Stephanie to file an expedited request for custody modification to permit Terrance to stay with Stephanie in New Mexico rather than return to Alaska.

Maxwell filed a motion with the superior court on August 20, 2012, stating that he had miscalendared the hearing and arguing that Stephanie had "misl[ed] this court by saying that [Maxwell] has 'fallen off the planet.' "  Maxwell stated that he was attaching his telephone records "showing that there has in fact been communication" between himself, his son, and Stephanie, but he did not attach those records.  At the subsequent trial-setting conference on August 30, 2012, the superior court told Maxwell, "You do need to supplement what you filed, because . . . the phone records were not attached to your paperwork. . . . Since you said it was there you need to supply it." Maxwell never supplied his phone records.

---

[11]    *Id.*

[12]    *Id.*

In preparation for the rescheduled hearing on remand, Stephanie sent Maxwell ten requests for production of evidence, eight interrogatories, and three requests for admission in two sets of discovery requests dated September 6 and 7, 2012. The three requests for admission requested Maxwell to admit the truth of the following statements: (1) "that [Terrance] has lived with [Maxwell's] mother . . . for the majority of the time between August 15, 2011 and May 30, 2012"; (2) "that [Maxwell] refused to communicate with [Stephanie] about [Terrance's] return to Alaska prior to August 6, 2012"; and (3) that "[Maxwell] stopped [Terrance's] counseling without first consulting with [Stephanie] as his joint legal custodian." Maxwell did not timely respond to these requests for admissions; indeed, he never responded at all.

Stephanie filed a motion for Alaska Civil Rule 37(d)[13] relief on October 31, 2012, noting that Maxwell had not responded to her interrogatories and requests for production[14] and seeking discovery sanctions that would take the stability factor "as established in [Stephanie's] favor" and preclude Maxwell "from introducing evidence to support or oppose these factors." Stephanie also requested the superior court to take as established "[Maxwell's] unwillingness to foster or allow a close and continuing relationship" between Terrance and Stephanie and to preclude Maxwell "from introducing evidence to support or oppose this finding."

At the final hearing on remand on November 13, 2012, the superior court denied Stephanie's motion for Rule 37(d) relief. The superior court correctly reasoned

---

[13] Alaska Rule of Civil Procedure 37(d) provides, "If a party . . . fails . . . to serve answers or objections to interrogatories submitted under Rule 33 . . . or . . . to serve a written response to a request for inspection submitted under Rule 34, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just . . . ."

[14] Her motion omitted any reference to unanswered requests for admission.

that it could not impose "litigation-ending sanctions" without first exploring alternatives such as a continuance, a show-cause hearing, or a motion to compel. At the hearing, Stephanie and Maxwell testified and presented evidence regarding the three facts that Stephanie had requested that Maxwell admit. Stephanie never asked that the unanswered requests for admission be deemed admitted and conclusive of the alleged facts, and she never argued that the superior court erred by not reiterating its requirement that Maxwell produce his telephone records.

The superior court granted Maxwell primary physical custody and shared legal custody. On the stability issue, the superior court noted that "it has had some difficulty implementing the [supreme court's] orders on remand" because it could "find no support in the record of the first hearing for the statement that [Stephanie] chose her nursing job in part because she had not been receiving child support." The superior court noted that "when directly asked at the recent hearing why she took the job, she stated that it paid well and was close to family." The superior court concluded that the supreme court's remand instructions on this issue were moot because Stephanie's circumstances had changed: She lived near her work and had a normal working schedule, such that the stability factor now "favors [Stephanie] to some extent, since she is financially more stable than [Maxwell]."

On the continuing-relationship issue, the superior court determined that because Terrance "has admitted he lied about the sexual abuse," Stephanie "has no reason to be concerned about this issue any more, thereby rendering the allegations irrelevant to the close relationship factor." The superior court went on to conclude that "[t]he close relationship factor . . . strongly favors [Maxwell]." The superior court provided a number of reasons leading to its conclusion, including its finding that Maxwell "has not allowed his feelings to preclude [Terrance] from having a relationship with his mother," while "[t]he same cannot be said for" Stephanie because "she monitors

[Terrance's] calls with his father." The superior court "found credible . . . [Maxwell's] allegation that [Stephanie] would tell [Terrance] what to say [on the phone]." The superior court also noted that the "most important" factor in its continuing-relationship determination was its finding that Stephanie "simply was not completely straightforward with the court at the [first] hearing [on remand]" when she "led the court to believe that [Maxwell] no longer was involved with his son and that she had no way to reach [Maxwell]." "[Stephanie] basically took advantage of [Maxwell's] absence from the [August 3] hearing to keep [Terrance] to herself, even though she knew that [Maxwell] had not abandoned [Terrance] and that it was perfectly possible for her to communicate with [Maxwell]."

In addition to these factors underlying the continuing-relationship determination, the superior court also relied on the fact that "[Stephanie] made . . . [a] very negative allegation[] for which she had almost no support" when she "contended that [Maxwell] was cooking and using methamphetamine." Stephanie had alleged at trial that she had noticed a powerful chemical and diesel-like smell coming from Terrance's clothing when she picked him up at the airport and that she thought that Maxwell had been manufacturing methamphetamine with Terrance in the garage. The superior court determined that Stephanie had almost no basis for this claim.

Stephanie filed a number of motions for post-order relief. She filed a motion to reconsider the custody order that also included a motion for Judge Eric Smith to recuse himself. The motion to recuse was denied, and the court granted limited reconsideration on certain issues, including the accusation of methamphetamine manufacturing and Maxwell's child support arrears. The superior court concluded that it had not violated this court's remand instructions on both issues, maintaining that (1) the *Stephanie W.* protections for allegations do not extend to accusations of manufacturing methamphetamine because that does not constitute domestic violence;

(2) because Stephanie was now found to provide more stability than Maxwell the supreme court's instructions were moot; and (3) Maxwell could adequately provide for the needs of the child. Stephanie then filed an Alaska Civil Rule 59 motion to reopen evidence, arguing in relevant part that she should be allowed to present evidence of her experience detecting smells resulting from methamphetamine manufacturing because she was reluctant to present such evidence in the hearing for fear of being punished by the superior court. The superior court denied her motion to reopen evidence stating that the evidence was not new and that Stephanie could have presented it at trial. Finally, Stephanie filed a motion to reconsider the court's order denying her Rule 59 motion to reopen evidence, arguing for the first time that the superior court erred by refusing to deem admitted Stephanie's unanswered requests for admission. The superior court denied Stephanie's motion because she did not seek to provide new evidence and she relied on an argument not raised in her initial Civil Rule 59 motion.

Stephanie appeals. She raises five primary points on appeal. Three of her points on appeal deal with issues of civil procedure, discovery, and evidence relating to the procedure on remand: She alleges that the superior court abused its discretion by refusing to accept unanswered requests for admission as conclusively established in her favor under Alaska Civil Rule 36; she alleges that the superior court abused its discretion by denying her motion to establish certain custody factors and key facts in her favor as discovery sanctions under Civil Rule 37(d); and she alleges that the superior court abused its discretion by refusing to enforce its own order for Maxwell to produce telephone records. The final two points on appeal address the superior court's determination of two custody factors in light of this court's remand instructions: Stephanie argues that the superior court abused its discretion by failing to consider Maxwell's child support arrears in its stability determination, and Stephanie also argues that the superior court abused its discretion by holding against her in the continuing-

relationship factor her allegations that Maxwell was manufacturing methamphetamine with Terrance present.

## III. STANDARD OF REVIEW

### A. Standards Relevant To The Discovery Issues

"The trial court's decision to allow or disallow the withdrawal of an admission [under Civil Rule 36] is subject to reversal for abuse of discretion."[15]

"The superior court generally has broad discretion in sanctioning discovery violations [under Civil Rule 37], 'subject only to review for abuse of discretion.' But 'the trial court's discretion is limited when the effect of the sanction it selects is to impose liability on the offending party, establish the outcome of or preclude evidence on a central issue, or end the litigation entirely.' "[16]

"When interpreting the Civil Rules we exercise our independent judgment, adopting the rule of law that is most persuasive in light of reason, precedent, and policy."[17]

### B. Standards Relevant To Custody Factor Issues

"A trial court's determination of custody will be set aside only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the

---

[15] *Hughes v. Bobich*, 875 P.2d 749, 755 (Alaska 1994) (citing *City of Kenai v. Ferguson*, 732 P.2d 184, 190 (Alaska 1987)).

[16] *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 12 P.3d 1169, 1175 (Alaska 2000) (quoting *Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1169 (Alaska 1998)) (footnotes omitted).

[17] *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 922 (Alaska 2002) (quoting *Peter v. Progressive Corp.*, 986 P.2d 865, 867 (Alaska 1999)) (internal quotation marks omitted).

trial court has abused its discretion."[18] "A finding of fact is clearly erroneous only when a review of the entire record leaves us with a definite and firm conviction that the trial court has made a mistake."[19] "An abuse of discretion has occurred if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[20]

"Whether a lower court on remand has correctly applied our mandate is a question of law which we review de novo."[21]

## IV. DISCUSSION

### A. Stephanie's Three Arguments Relating To Discovery On Remand

**1. Stephanie failed to preserve for appeal her argument that the superior court's failure to deem unanswered requests for admission conclusively admitted under Civil Rule 36 was an abuse of discretion.**

Stephanie argues that her three requests for admission to which Maxwell never responded should have received conclusive effect under Civil Rule 36[22] and that

---

[18] *Melendrez v. Melendrez*, 143 P.3d 957, 959 (Alaska 2006) (internal quotation marks omitted).

[19] *Evans v. Evans*, 869 P.2d 478, 479 (Alaska 1994).

[20] *Id.* at 479-80.

[21] *Moeller-Prokosch v. Prokosch*, 53 P.3d 152, 154 (Alaska 2002) (internal quotation marks omitted).

[22] Alaska Rule of Civil Procedure 36 establishes a procedure for parties to request admission of the truth of any matter within the general scope of discovery under Civil Rule 26(b)(1). Rule 36 also provides that "[t]he matter is admitted unless . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter. . . . The party who has requested the

(continued...)

the superior court erred by denying that conclusive effect. She specifically argues that Rule 36 is "self-executing," and that unanswered requests for admission should be automatically deemed admitted upon non-receipt of a timely response. She maintains that the superior court "had *no discretion* to ignore [Stephanie's] unanswered Rule 36 requests,"[23] and that Rule 36 permits withdrawal of deemed admissions only on motion.

But Stephanie failed to preserve this argument for appeal because she did not timely present it to the superior court. In order to preserve an issue for appeal, appellants "must show they raised the issue below."[24] But "[a]n issue raised for the first time in a motion for reconsideration is not timely" and is therefore not preserved for appeal.[25] Because Stephanie did not raise her deemed-admission argument before the superior court until her motion to reconsider the superior court's order denying her Civil

---

**22**(...continued)
admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served." Alaska R. Civ. P. 36(a). Finally, Rule 36 provides that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Alaska R. Civ. P. 36(b).

**23**      Emphasis in original.

**24**      *Stadnicky v. Southpark Terrace Homeowner's Ass'n*, 939 P.2d 403, 405 (Alaska 1997).

**25**      *Id.* (citing *Miller v. Miller*, 890 P.2d 574, 576 n.2 (Alaska 1995) ("[T]he issue was improperly raised in the motion for reconsideration, since it had never previously been raised.")); *see also McCarter v. McCarter*, 303 P.3d 509, 513 (Alaska 2013) ("[Appellant] made this statutory argument for the first time in his motion for reconsideration, and it is therefore waived."); *Howe v. Howe*, Mem. Op. & J. No. 1306, 2008 WL 1914361, at *1 n.4 (Alaska, Apr. 30, 2008) (characterizing *Stadnicky* as "noting that issue raised for first time in motion for reconsideration is untimely and insufficient to preserve claim for appeal").

Rule 59 motion to reopen evidence,[26] she cannot raise it on appeal. We decline to reach the merits of Stephanie's unpreserved argument and note that the superior court did not commit plain error in this case.[27]

---

[26]     Despite Stephanie's statement to the contrary in her brief in this court, Stephanie's motion for Rule 37(d) relief did not request that the court deem admitted Stephanie's unanswered requests for admission. Nor did Stephanie ever raise this issue during the hearings, in her motion for reconsideration of the custody order, or in her Rule 59 motion to reopen evidence.

[27]     "[W]aiver will not be found where an issue raises plain error." *Fernandes v. Portwine*, 56 P.3d 1, 9 n.27 (Alaska 2002) (citing *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 n.29 (Alaska 2001)). But here, no "obvious mistake has been made which creates a high likelihood that injustice has resulted." *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 436 (Alaska 2012) (quoting *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001)).

Without engaging in a full merits analysis, we note that implicit in Rule 36's structure is a requirement that the party seeking deemed admissions must make a timely request that the unanswered requests be deemed admitted. For instance, Rule 36's procedure for determining the sufficiency of an answer or objection to a request for admission puts the onus on the party seeking the admission to make an appropriate request before the court's duty under the Rule is triggered. *See* Alaska R. Civ. P. 36(a). This is confirmed by the more general proposition that "in the vast majority of instances, the discovery system will be self-executing." *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 12 P.3d 1169, 1175 (Alaska 2000) (quoting 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 37.90, at 37-141 (3d ed. 1997)). We also note that in all of our prior cases discussing Rule 36, the party seeking unanswered requests for admission to be deemed admitted has always made such a request in the superior court. *See, e.g.*, *Gladden v. City of Dillingham*, Mem. Op. & J. No. 1253, 2006 WL 1668029, at *1 (Alaska, June 14, 2006) ("The city further moved to have its unanswered requests for admission deemed admitted."); *Kaiser v. Sakata*, 40 P.3d 800, 802 (Alaska 2002) ("[T]he defendants moved for summary judgment. They argued that because Kaiser had failed to timely respond to discovery requests, the defense's requests for admission must be deemed admitted . . . ."); *Hughes v. Bobich*, 875 P.2d 749, 751 (Alaska 1994) ("In his summary judgment motion, Bobich argued that, under Alaska Civil Rule 36(a), the Hughes' failure to file a timely response to his request should be

(continued...)

## 2. The superior court did not abuse its discretion by denying Stephanie's Rule 37(d) motion for discovery sanctions.

Stephanie argues that the superior court abused its discretion by denying her motion under Civil Rule 37(d)[28] to sanction Maxwell's failure to respond to Stephanie's discovery requests. Her Rule 37(d) motion requested that the superior court establish the stability factor in Stephanie's favor, find that Maxwell was unwilling to foster a close and continuing relationship between Terrance and Stephanie, and preclude Maxwell from introducing contrary evidence on those two issues.

Under Rule 37, "the trial court's discretion [to sanction discovery violations] is limited when the effect of the sanction it selects is to . . . establish the outcome of or preclude evidence on a central issue, or end the litigation entirely."[29] In particular, "the trial court's discretion to impose [litigation-ending] sanctions is narrowly

---

[27](...continued) construed as an admission that they had already been paid."); *Pletnikoff v. Johnson*, 765 P.2d 973, 974-75 (Alaska 1988) ("Johnson moved for partial summary judgment . . . argu[ing] that, since Pletnikoff did not respond to the requests, the requests were deemed admitted and therefore no genuine issue of material fact remained on the issue of damages."); *City of Kenai v. Ferguson*, 732 P.2d 184, 189 (Alaska 1987) ("[T]he City moved for summary judgment, relying on the requests for admissions being deemed admitted because of Ferguson's failure to respond.").

[28]     Alaska Rule of Civil Procedure 37(d) provides, "If a party . . . fails . . . to serve answers or objections to interrogatories submitted under Rule 33 . . . or . . . to serve a written response to a request for inspection submitted under Rule 34, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just . . . ."

[29]     *Hikita*, 12 P.3d at 1175 (quoting *Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1169 (Alaska 1998) (internal quotation marks omitted)).

limited to extreme situations," and such sanctions cannot be imposed "where an alternative remedy would suffice to make the adverse party whole."[30]

Here, the superior court did not abuse its discretion by denying Stephanie's Rule 37(d) motion for discovery sanctions. Stephanie did not seek an order compelling production in response to her unanswered interrogatories and requests for production or other, less-draconian options before filing her Rule 37(d) motion seeking to establish key custody factors in her favor. Indeed, it is likely under these facts that the superior court would have abused its discretion had it granted such litigation-ending sanctions without first exploring alternative remedies.

### 3. Stephanie failed to preserve her argument that the superior court abused its discretion by not enforcing an order compelling Maxwell to produce his telephone records.

Stephanie argues that the superior court abused its discretion by first ordering Maxwell to produce certain telephone records[31] and then not enforcing its own order when Maxwell did not produce the records.

As with her Rule 36 argument above, Stephanie failed to timely present this argument to the superior court. In order to preserve an issue for appeal, appellants "must show they raised the issue below."[32] "An issue raised for the first time in a motion for

---

[30]    *Hughes*, 875 P.2d at 752-53.

[31]    Maxwell had indicated that he was attaching telephone records to his motion to the superior court following the first hearing. He did not attach the records with the other exhibits. The superior court stated at the subsequent trial-setting conference, "You need to supplement what you filed, because . . . the phone records were not attached to your paperwork. . . . Since you said it was there you need to supply it." Maxwell never supplied his phone records.

[32]    *Stadnicky*, 939 P.2d at 405.

reconsideration is not timely" and is therefore not preserved for appeal.[33]   Here, Stephanie did not raise this argument with the superior court until her motion to reconsider the superior court's order denying her Rule 59 motion to reopen evidence. The superior court correctly concluded that the argument was not timely raised.  We decline to reach the merits of Stephanie's unpreserved argument and note that the superior court did not commit plain error in this case.[34]

> **B.**     **The Superior Court Did Not Abuse Its Discretion Or Clearly Err In Awarding Primary Physical Custody To Maxwell.**
>
> > **1.**     **The superior court did not abuse its discretion in its reconsideration of the stability factor, AS 25.24.150(c)(5), on remand.**

Alaska Statute 25.24.150(c)(5) requires a court determining custody to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."  The superior court's initial order granting Maxwell primary physical custody concluded that this factor favored Maxwell because he had a stable job and living situation while Stephanie worked four 12-hour shifts 70 miles from home, which "provide[d] some roadblocks in terms of her working with the kids."  On review in this court, we were "troubled by the reliance on Maxwell's more stable economic status compared to Stephanie's long commute and hard working hours

---

[33]     *Id.* (citing *Miller v. Miller*, 890 P.2d 574, 576 n.2 (Alaska 1995)).

[34]     "[W]aiver will not be found where an issue raises plain error." *Fernandes v. Portwine*, 56 P.3d 1, 9 n.27 (Alaska 2002) (citing *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 n.29 (Alaska 2001)).  But here, no "obvious mistake has been made which creates a high likelihood that injustice has resulted." *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 436 (Alaska 2012) (quoting *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001)).

while ignoring Maxwell's failure to pay . . . child support over the course of his child's life."[35]  We remanded for reconsideration of the stability factor.[36]

Stephanie argues that the superior court improperly questioned this court's remand instructions.  In its order, the superior court stated:  "With all due respect to the Alaska Supreme Court, the court . . . notes that it has had some difficulty implementing the Court's orders on remand" because "the court simply can find no support in the record of the first hearing for the statement that [Stephanie] chose her nursing job in part because she had not been receiving child support."  The superior court proceeded to characterize Stephanie's testimony at the hearing on remand as indicating that she took the nursing job because "it paid well and was close to family."

We can understand why the superior court's remarks questioning the basis of this court's ruling could have caused some confusion and might have been troubling to Stephanie as a successful appellate litigant.  But the superior court's remarks are irrelevant to the question raised in this appeal because the superior court determined that the stability factor now favors Stephanie rather than Maxwell.  As the superior court concluded on remand, "the factual predicate for the Court's decision [in *Stephanie W.*] . . . is moot" because Stephanie "no longer is working the grueling hours that had concerned this court, and she is living near where she works."[37]

---

[35]    *Stephanie W. v. Maxwell V.*, 274 P.3d 1185, 1193 (Alaska 2012).

[36]    *Id.*

[37]    *Cf. State v. Oriental Fire & Marine Ins. Co.*, 776 P.2d 776, 778 n.4 (Alaska 1989) (noting that a change in a factual predicate to a motion for remand — in that case, a stipulation by the parties to dismiss the relevant complaint — "render[s] moot the question raised on remand").

Because we hold that the superior court did not abuse its discretion in its

(continued...)

**2.     The superior court did not abuse its discretion in determining that the continuing-relationship factor, AS 25.24.150(c)(6), favors Maxwell.**

Alaska Statute 25.24.150(c)(6) requires a court determining custody to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." The statute goes on to carve out an exception, directing the court not to "consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child."[38]

In the first custody hearing in the superior court, Stephanie expressed her concern about Terrance's sexually aggressive and age-inappropriate behaviors after he returned to New Mexico from a year in Alaska with Maxwell.[39] Stephanie further claimed that Terrance told her that he had suffered sexual abuse from Maxwell in Alaska.[40] Stephanie notified the police and pressed the issue in her custody dispute with Maxwell as a reason to grant her sole custody.[41] The superior court determined that

---

[37](...continued)
handling of the stability factor and do not remand, Stephanie's argument that Judge Smith "departed from the role of an impartial fact-finder and instead assumed the role of [Maxwell's] advocate" and should therefore be disqualified from hearing the case on remand is also moot.

[38]     AS 25.24.150(c)(6).

[39]     *Stephanie W.*, 274 P.3d at 1188.

[40]     *Id.*

[41]     *Id.*

Stephanie had not proved abuse by a preponderance of the evidence.[42] The superior court's initial order granting Maxwell primary physical custody concluded that Maxwell was more likely than Stephanie to foster a relationship between Terrance and the other parent in part because of Stephanie's continued anxiety relating to the alleged but unproved sexual abuse.[43]

In *Stephanie W.*,[44] we noted that AS 25.24.150(c)(6)'s explicit exception was "silent on the procedure to be followed if the court finds that abuse has *not* been shown," and we quoted Stephanie's argument "that it would be bad policy to hold her good faith belief that Maxwell sexually abused Terrance against her" because "no parent in their right mind would ever make a good faith report of domestic violence or sexual abuse" in the future.[45] We concluded that "[i]n light of the apparent good-faith basis of Stephanie's allegations, . . . the superior court should re-weigh the 'willingness to allow a close and continuing relationship' factor. On remand, the court should not consider this factor against Stephanie unless she has continued her unwillingness to facilitate such a relationship in the period after the superior court made its evidence-based finding that Maxwell had not abused Terrance."[46]

On remand, the superior court determined that because Terrance "has admitted he lied about the sexual abuse," Stephanie "has no reason to be concerned about this issue any more, thereby rendering the allegations irrelevant to the close relationship

---

[42]    *Id.*

[43]    *Id.* at 1188-89.

[44]    *Id.*

[45]    *Id.* at 1191.

[46]    *Id.*

factor." But in the hearing on remand, Stephanie made another allegation that Maxwell was endangering Terrance. Stephanie alleged that she had noticed a powerful chemical and diesel-like smell coming from Terrance's clothing when she picked him up at the airport and that she thought that Maxwell had been manufacturing methamphetamine with Terrance in the garage.

The superior court concluded that "[t]he close relationship factor . . . strongly favors [Maxwell]" for a number of reasons, including the fact that Stephanie "made . . . [a] very negative allegation[] for which she had almost no support." "Her only basis for this claim was that [Terrance] smelled of chemicals when he arrived at the airport this summer. But [Terrance] himself explained what was going on — [Maxwell] was making fuel for his car. And [Maxwell] did not present at all at trial as a person on methamphetamine." The superior court later concluded that "her belief about the meth lab was emblematic of her general proclivity to assume the worst about [Maxwell]." The superior court denied the applicability of the *Stephanie W.* rule in this case because Stephanie's allegation "has no connection to any domestic violence, much less sexual abuse, and hence is not precluded by AS 25.24.150(c)(6)."

Stephanie argues in this court that the superior court has repeated its original error of holding against her a good-faith allegation of the other parent acting in a way that could bring harm to the child. Stephanie argues that her methamphetamine-manufacturing allegation should receive the benefit of protection under *Stephanie W.* She offers a complex argument interpreting "domestic violence" as used in AS 25.24.150(c)(6) to include allegations of actions constituting the crime of "reckless

endangerment" under AS 11.41.250[47] and further argues that her allegations, if proved correct, would constitute reckless endangerment and thus domestic violence.

We do not reach the question of statutory interpretation raised by Stephanie because it is unnecessary for us to do so. Even without the specific statutory protections provided by AS 25.24.150(c)(6), it is common sense that in a custody proceeding, good-faith allegations by one parent against the other parent regarding behavior relevant to the custody decision and the child's best interests should not be held against the reporting parent in the superior court's continuing-relationship determination where the allegations are based on supporting evidence. That supporting evidence might be found in the court's objective credibility determination or in extrinsic evidence.[48] In making the decision whether a reporting parent's good-faith but unproved allegations can be considered in the continuing-relationship determination, the superior court must balance two competing goals: the desire of the court to encourage good-faith, objectively credible reports of parental behavior relevant to the custody dispute, and the need to guard against

---

[47] AS 25.24.150(c)(6)'s exception is triggered for "domestic violence" by "the other parent . . . against the parent or a child." AS 25.90.010 defines "domestic violence" as used in that title by cross-referencing "the meanings given in AS 18.66.990." In turn, AS 18.66.990(3)(A) provides that "domestic violence" includes "a crime against the person under AS 11.41" that is committed "by a household member against another household member." Finally, AS 11.41.250(a) makes "reckless endangerment" a crime against the person and specifies that "[a] person commits the crime of reckless endangerment if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

[48] Both types of evidence were at play in *Stephanie W.*, where we noted that "the superior court acknowledged that the allegations of sexual abuse were 'troubling' and that neither party had been able to demonstrate what had caused Terrance to act out sexually" and that "Stephanie had adduced expert opinion testimony from 'a highly experienced forensic interviewer of children' and from a children's counselor who were generally supportive of Stephanie's suspicions." 274 P.3d at 1191.

false reports and to consider a parent's actual unwillingness to foster a relationship with the other parent. As with other determinations under the custody statute, we will review the superior court's balancing determination for abuse of discretion.

In this case, if Stephanie's allegation were true and Maxwell had been manufacturing methamphetamine in Terrance's presence, that would certainly have been relevant information for the ultimate custody determination. Even without the statutory protection that we interpreted in *Stephanie W.*, it would be inappropriate to fault a parent for reporting such a dangerous situation if the allegations were made in good faith and were sufficiently supported to merit protection in the balancing test. Here, we cannot conclude that the superior court abused its discretion in determining that Stephanie had not presented sufficient evidence in support of her allegation to warrant removing the unfounded allegation from consideration in the continuing-relationship factor. As the superior court reasoned, Stephanie had "almost no support" for her allegation, testifying only that she observed a chemical smell on Terrance's clothing. The superior court did not abuse its discretion in concluding that "she did not have an adequate basis for [concluding that Maxwell was manufacturing methamphetamine with Terrance] and that her belief about the meth lab was emblematic of her general proclivity to assume the worst about [Maxwell]."

## V.    CONCLUSION

For these reasons, the superior court's orders are AFFIRMED in all respects.