NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES HENRY BINGMAN SR., a/k/a JIM BINGMAN, and d/b/a BAYVIEW TERRACE, | ) ) ) | Supreme Court No. S-15706 |
| | ) | Superior Court No. 3DI-12-00132 CI |
| Appellant, | ) ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | AND JUDGMENT* |
| | ) | |
| CITY OF DILLINGHAM, | ) | No. 1561 – December 9, 2015 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Dillingham, Pat L. Douglass, Judge.

Appearances: James Henry Bingman Sr., pro se, Dillingham, Appellant. Patrick W. Munson, Boyd, Chandler & Falconer, LLP, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

## I.      FACTS AND PROCEEDINGS

James H. Bingman, Sr. owned, operated, and received substantial income from apartment units in the City of Dillingham. A city ordinance required Bingman to

---

\*      Entered under Alaska Appellate Rule 214.

collect and remit a 6% sales tax,[1] but Bingman failed to do so. The City notified Bingman of his delinquent payments, and after further investigation, the City discovered that Bingman had grossly under-reported his taxable sales for years.

The City instructed Bingman to provide an accounting, warning that if he failed to do so the City would estimate his sales tax liability. It also sought payment of Bingman's outstanding property taxes and unpaid utility bills. Finally the City reminded Bingman that he had not obtained an annual business license or certificate of authority to conduct business and collect sales taxes after 2007 and required him to do so immediately.[2] When Bingman failed to provide an accounting for his sales tax liability, the City sent him a detailed estimate for January 2007 through September 18, 2012, including interest and penalties, totaling about $147,000. Under city ordinance this estimate was final unless Bingman documented a lesser liability within 30 days.[3]

Bingman did not provide information indicating a lesser liability. He instead mailed a series of letters challenging the City's authority to collect taxes and require credentials for running a business. He styled many of these letters as contract documents purporting to reduce or eliminate his liability. Generally Bingman would

---

[1]     *See* Dillingham Municipal Code (DMC) 04.20.080 (2015) ("The tax to be added to the sale price[] shall be ten percent for alcohol and transient lodging and six percent for all other sales at retail.").

[2]     *See* DMC 04.16.060 (prohibiting business operation without obtaining license within 45 days of commencing business); DMC 04.20.090 (requiring seller to apply for certificate of authority to collect sales tax no more than 10 days after commencing business).

[3]     *See* DMC 04.20.180 ("Notice of the estimate of sales taxes due shall be furnished the seller and shall become final for the purposes of determining liability of seller to the city in thirty days unless the seller earlier files an accurate return, supported by satisfactory records, indicating a lesser liability.").

send an "offer" specifying various terms that relieved or reduced his tax liability and listing specific terms for rejecting the offer; he defined silence by the City or a rejection not complying with his specific terms as a manifestation of assent. Rejection terms sometimes were creative; for example, Bingman once demanded that the City "fulfill" rejection by delivering gold coins to a California address. The City invariably rejected Bingman's offers, although not on his specified terms.

After the September 2012 sales tax liability estimate became final, the City liened Bingman's property. In November the City filed suit to: (1) foreclose the sales tax lien; (2) establish Bingman's personal liability for debt secured by the lien; (3) establish Bingman's liability for sales taxes accruing after the lien was recorded; (4) determine penalties for Bingman's failure to obtain a business license from 2008 to 2012; (5) determine penalties for Bingman's failure to apply for a certificate of authority to collect sales tax; (6) calculate liability for Bingman's unpaid utility bills; and (7) obtain injunctive relief requiring Bingman to comply with city law during the litigation.

In his answer to the City's complaint Bingman admitted his sales tax liability, partially denied liability for his failure to obtain a business license or a certificate for collecting sales tax, acknowledged liability for some unpaid utilities, and agreed to comply with all city ordinances if the superior court granted a stay to allow him time to negotiate a settlement. Bingman asserted that a "standing contract" with the City exempted him from the ordinance requiring a business license and a certificate of authority to collect taxes. He further contended that he was liable for utility fees for only one dwelling unit, charged on a per building rather than per apartment unit basis. Finally Bingman argued that the City's use of sewer pipes on his property to transport wastewater from his apartment units to the city-owned sewer system gave him the right to receive just compensation and waived his fees for using the sewer system.

The City moved for partial summary judgment and the superior court ruled that: (1) Bingman was liable for the undisputed sales taxes based on the September 2012 estimate plus penalties and interest; (2) Bingman was liable for sales taxes accruing after the complaint was filed in a specific amount to be determined at trial; and (3) Bingman was liable for unpaid utility fees per apartment unit, not per apartment building.

Meanwhile the City also moved to compel Bingman's responses to outstanding discovery requests. Bingman had failed to cooperate with basic discovery for nearly a half year, claiming that his business information was privileged from discovery and that pursuant to one of his "contracts" with the City he was not required to produce this privileged information. Bingman failed to comply even after the court compelled discovery. The court then imposed sanctions, accepting as true all estimates of Bingman's revenues, rental history, and tax liabilities alleged in the complaint.[4]

At trial the superior court declared it would determine three issues: (1) sales tax liability accrued after August 2012; (2) the amount owed for unpaid utilities; and (3) penalties owed for failure to obtain a business license from 2008 to 2013. The court found for the City, concluding that Bingman was liable for unpaid sales taxes (with interest but no penalties), penalties for failing to obtain a business license and certificate of authority each year after 2007, unpaid utilities assessed per apartment unit, and interest on unpaid utilities. In the "interest of justice" the court waived some penalties for unpaid utilities. The court found Bingman liable for slightly more than $230,000.

Shortly after the superior court entered its memorandum decision, Bingman moved to compel an acknowledgment that he had satisfied his obligation by tendering

---

[4]     *See* Alaska R. Civ. P. 37(b)(2)(A) (authorizing as sanction for refusing to comply with discovery order "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order").

a "Security Agreement" as payment for his liability on "all claims, obligations, and taxes" owed to the City. He argued that the City had forfeited its right to recover against him by failing to agree to the terms in this agreement within 30 days. The superior court denied Bingman's motion.

The court later granted full reasonable attorney's fees to the City and entered both a total judgment for nearly $300,000 against Bingman and a judgment of foreclosure against Bingman's property.

## II. DISCUSSION

Bingman appeals, primarily contending that the superior court erred by refusing to find his purported contract letters, sent both prior to and after the trial, legally binding on the City: Bingman claims he satisfied both his discovery and financial obligations to the City through "offers" conveyed in these letters, and the City had accepted by not responding to or by failing to properly reject the specified terms. But the record and the law are clear — no reasonable person could have understood the City's silence to be an assent, and the City did not intend its silence to be an assent.[5] Bingman provides no authority that an offeror may unilaterally create conditions for rejecting an offer which, if not met according to the offeror's express terms, would transform the offeree's action into an acceptance. Bingman's arguments are frivolous; the superior court did not err by: (1) compelling discovery and later sanctioning Bingman for failing to comply;[6] (2) rejecting proposed evidence of Bingman's alleged

---

[5]    *See Lexington Ins. Co. v. Lindahl Constr. & Eng'g, Inc.*, 47 P.3d 1081, 1086-87 (Alaska 2002) (noting silence operates as acceptance only if party has reason to understand silence could be acceptance *and* by remaining silent that party intends to accept).

[6]    When a trial court grants or denies a motion to compel discovery responses, we review its decision for abuse of discretion. *See Lockwood v. Geico Gen. Ins. Co.*, 323

(continued...)

contract documents; (3) refusing to require an acknowledgment that the judgment had been satisfied;[7] and (4) awarding the City full reasonable attorney's fees.[8]

---

[6] (...continued)
P.3d 691, 696 (Alaska 2014). Alaska's discovery rules allow liberal civil discovery, requiring parties to disclose information relevant to disputed facts alleged in the pleadings. *See* Alaska R. Civ. P. 26(a)(1)(D); *Lockwood*, 323 P.3d at 699 ("[D]iscovery rules are to be broadly construed and relevance for purposes of discovery is broader than for purposes of trial." (quoting *Lee v. State*, 141 P.3d 342, 347 (Alaska 2006)) (internal quotation marks omitted)). Here the City sought information relevant to its claims against Bingman for unpaid sales taxes and utilities. Bingman's contention — that his business information is privileged — is frivolous. Alaska Evidence Rule 501 provides that all information is presumptively *not* privileged unless specifically protected by the U.S. Constitution, Alaska Constitution, Alaska Statutes, or a court rule; and without such protection, no person may "refuse to disclose any matter" or "refuse to produce any object or writing." Alaska R. Evid. 501. Because Bingman was required to disclose relevant information and failed to invoke a legally valid privilege, the superior court did not abuse its discretion by ordering Bingman to respond to the City's discovery. And because Bingman disobeyed this order, given the facts of this case, the superior court did not abuse its discretion by imposing sanctions on Bingman. *See Stephanie W. v. Maxwell V.*, 319 P.3d 219, 224-25 (Alaska 2014) ("The superior court generally has broad discretion in sanctioning discovery violations [under Civil Rule 37], subject only to review for abuse of discretion." (alteration in original) (quoting *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 12 P.2d 1169, 1175 (Alaska 2000)) (internal quotation marks omitted)); *Sowinski v. Walker*, 198 P.3d 1134, 1158 (Alaska 2008) ("We . . . review for abuse of discretion a trial court's choice of a particular sanction for a discovery violation.").

[7] Bingman relatedly argues that enforcement of the lien against his property was subject to AS 45.29.601, a provision of Alaska's Uniform Commercial Code, governing secured transactions in trade and commerce. This argument is equally frivolous. The superior court correctly applied the statute governing actions to foreclose real property liens, which provides:

> A person having a lien upon real property . . . to secure a debt
> or other obligation may bring an action to foreclose the lien.
> In the action, the court may direct the sale of the encumbered
> property or a portion of it and the application of the proceeds

(continued...)

Bingman also argues that he had no duty to collect and remit sales taxes during the time periods when he did not hold a certificate of authority to do so. But failing to comply with the requirement to obtain a certificate to collect and remit sales tax did not eliminate Bingman's duty to comply with the City's sales tax ordinances.[9] Bingman's argument is frivolous: his unlawful conduct in failing to comply with the certification requirements did not eliminate his duty to collect tax.

Bingman's remaining arguments are waived for inadequate briefing or raise issues that do not need to be decided in light of the foregoing discussion.

## III.   CONCLUSION

We AFFIRM the superior court's judgment in all respects. In light of the frivolousness of Bingman's arguments, we will entertain a motion by the City for full reasonable attorney's fees incurred in this appeal.[10]

---

[7]   (...continued)
of the sale to the payment of costs, expenses of sale, and the amount due the plaintiff. The judgment shall also determine the personal liability of a defendant for the payment of the debt secured by the lien and be entered accordingly.

AS 09.45.170.

[8]   DMC 04.20.210(B) provides: "The city may . . . recover full actual reasonable attorney's fees in any action against a delinquent seller."

[9]   DMC 04.20.115(D) provides: "Failure by a seller to obtain a certificate of authority does not affect the seller's obligation to collect and remit sales taxes to the city as provided by this chapter. Such failure will, however, subject seller to penalties and other enforcement action by the city."

[10]   *See* Alaska R. App. P. 508(e)(2)-(3).